UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| POLYONE CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No.: 4:17-cv-6-HLM |
| | ) |
| QUALITY MAT, INC., and | ) |
| BRYAN McALAVY, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## COMPLAINT

Plaintiff PolyOne Corporation ("Plaintiff" or "PolyOne") for its Complaint against Defendants Quality Mat, Inc. ("Quality Mat") and Bryan McAlavy ("McAlavy") alleges as follows:

## PARTIES

1. Plaintiff PolyOne is, and at all times material herein was, an Ohio corporation with its principal place of business in Avon Lake, Ohio.

2. Defendant Quality Mat is, and at all times material herein was, a Georgia corporation with its principal place of business in Calhoun, Georgia.

3. Defendant McAlavy is an individual resident of and domiciled in Adairsville, Georgia. Defendant McAlavy is a citizen of Georgia.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, because the dispute is between citizens of different states and the amount in controversy exceeds $75,000.00.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as both Defendants reside in this District.

## FACTUAL BACKGROUND

6. On October 10, 2012, Quality Mat entered into a five year sales contract (the "Sales Contract") with MarChem Southeast, Inc. ("MarChem"), under which MarChem agreed to sell to Quality Mat, and Quality Mat agreed to purchase from MarChem, 100% of Quality Mat's requirements of plastisol products (the "Product").  *See* Sales Contract attached hereto as Exhibit "A".

7. PolyOne subsequently purchased MarChem's interest in the Sales Contract.  As a result, PolyOne is the assignee and successor-in-interest to the rights and duties of MarChem under the Sales Contract.

8. On October 15, 2012, McAlavy executed a personal guaranty of "any and all obligations of Quality Mat of every kind and character, irrespective of the amount of said obligations, whether now existing or hereafter arising … suffered by MarChem or MarChem's assigns by reason of Quality Mat's or Guarantor's

default in payment of any of the foregoing indebtedness, and any renewal, extension or rearrangement of the indebtedness, costs, or expenses associated with such default" (the "Personal Guaranty").  *See* Personal Guaranty attached hereto as Exhibit "B".

9. Pursuant to the Sales Contract, Quality Mat placed orders for the Product.

10. Despite receiving and accepting the Product, Quality Mat failed to pay for the Product in a timely fashion, resulting in an overdue receivable in the amount of approximately $270,404.22 as of May 7, 2015 (the "Past Due Receivable").

11. In part, due to the Past Due Receivable on May 7, 2015, Quality Mat and PolyOne entered into an Amendment to the Sales Contract (the "Amendment," and collectively with the Sales Contract, the "Amended Sales Contract").  *See* Amendment attached hereto as Exhibit "C".

12. Pursuant to the Amendment, Quality Mat agreed to the following:

    a. PolyOne is the assignee and successor-in-interest to the rights and duties of Marchem under the Sales Contract;

    b. the relevant terms and conditions shall be the PolyOne Terms and Conditions. *See* PolyOne Terms and Conditions attached hereto as Exhibit "D";

    c. the terms of payment shall be changed to Net 30 days;

    d. pursuant to a payment schedule, Quality Mat shall reduce and eliminate the Past Due Receivable to the following amounts by the following milestone dates: (1) $265,000 by June 30, 2015; (2) $130,000 by November 30, 2015; and (3) $0 by February 28, 2016; and

    e. in the event Quality Mat failed to reduce the Past Due Receivable to the agreed upon amounts by the agreed upon dates, it would immediately execute a promissory note based on the amount of overdue and unpaid invoices at that time.

13. After the execution of the Amendment, Quality Mat ordered additional Product from PolyOne but continued to fail to pay the invoices for the Product within 30 days, as required by the Amendment.

14. Quality Mat also failed to pay monies towards the Past Due Receivable as required by the Amendment.

15. As a result of Quality Mat's failures to timely pay for new Product and to pay down the Past Due Receivable, PolyOne demanded that Quality Mat execute a promissory in the amount of the Past Due Receivable plus the amount of the unpaid invoices as of the time of the demand, as contemplated by the Amendment.

16. Despite PolyOne's demand, Quality Mat failed to execute the promissory note.

17. Additionally, upon information and belief, Quality Mat failed to purchase 100% of its requirements of the Product from PolyOne as required by the Sales Contract.

18. On March 7, 2016, PolyOne reconciled Quality Mat's account and identified all remaining unpaid invoices for Product ordered by Quality Mat from November 2015 through February 2016.

19. As of March 7, 2016, these unpaid invoices totaled $457,152.26.

20. After PolyOne's reconciliation of Quality Mat's account on March 7, 2016, Quality Mat continued to order Product from PolyOne.

21. PolyOne delivered to Quality Mat all Product ordered by Quality Mat.

22. Quality Mat accepted the Product. At no time following the delivery of the Product did Quality Mat reject the Product.

23. As it ordered Product, Quality Mat sent some payments to PolyOne, frequently in random amounts not associated with a particular invoice.

24. PolyOne applied the incoming payments received from Quality Mat after March 7, 2016 to post March 7, 2016 orders of Product. Any additional monies were applied towards past unpaid invoices.

25. As of September 29, 2016, the invoices for the following product that Quality Mat ordered from PolyOne between November 19, 2015, and February 15, 2016, and between August 10, 2016, and August 26, 2016, have not been paid (collectively, the "Unpaid Invoices"):

   a. 2,953 lbs. of Geon A60-36A Unpigmented Lamin Adhesive at a total price of $3,691.25;

   b. 21,156 lbs. of Geon FK139-61 Tan Antifatigue Foam NP at a total price of $ 15,655.44;

   c. 315,965 lbs. of Geon SK131-80 Black Low Cost NP at a total price of $154,822.85;

   d. 94,252 lbs. of Geon V1621-80 Premium Black Mat Vinyl at a total price of $85,012.14;

   e. 232,242 lbs. of Geon V1706-80 Black Low Cost Commercial at a total price of $111,765.79;

6

  f. 84,230 lbs. of Geon V1818-61 Tan Foam NP at a total price of $66,926.23;

  g. 6,824 lbs. of Geon V1818-65 Chocolate Brown Foam NP at a total price of $5,322.72; and

  h. 17,380 lbs. of Geon FK150-61 Tan Antifatigue Foam NP at a total price of $12,861.20.

26. The Unpaid Invoices as of September 29, 2016 total $446,204.19. The Unpaid Invoices, identifying the Product description, quantity ordered, price per unit, and total price, are collectively attached hereto as Exhibit "E" and are incorporated herein by this reference.

27. On September 9, 2016, PolyOne ceased shipping Product to Quality Mat.

28. During 2016, PolyOne made several demands on Quality Mat to pay in full the Unpaid Invoices.

29. Despite multiple demands, Quality Mat failed and refused to pay the Unpaid Invoices.

30. On September 26, 2016, pursuant to the Personal Guaranty, PolyOne demanded that Mr. McAlavy pay for the Unpaid Invoices.

31. Despite PolyOne's demand, Mr. McAlavy has failed and refused to pay for the Unpaid Invoices.

## COUNT I – BREACH OF CONTRACT
### (Against Quality Mat)

32. PolyOne realleges and incorporates Paragraphs 1-31 as if set forth more fully herein.

33. The Amended Sales Contract constitutes a valid binding contract.

34. PolyOne has fully complied with its obligations under the Amended Sales Contract.

35. The Amended Sales Contract obligates Quality Mat to pay in full the Unpaid Invoices.

36. The Amended Sales Contract also obligates Quality Mat to purchase 100% of its requirements of the Product from PolyOne.

37. Quality Mat has failed to satisfy its obligations under the Amended Sales Contract by failing and refusing to pay the Unpaid Invoices.

38. Additionally, upon information and belief, Quality Mat has failed to satisfy its obligations under the Amended Sales Contract by failing to purchase 100% of its requirements of the Product from PolyOne.

39. The failures of Quality Mat to pay all amounts owed pursuant to the Unpaid Invoices and to purchase 100% of its requirements of the Product from PolyOne constitute breaches of contract.

40. Quality Mat's breaches of contract have caused PolyOne to be damaged in the amount of no less than $446,204.19 plus interest.

### COUNT II – BREACH OF PERSONAL GUARANTY
### (Against McAlavy)

41. PolyOne realleges and incorporates Paragraphs 1-40 as if set forth more fully herein.

42. The Personal Guaranty constitutes a valid binding contract.

43. Pursuant to the Personal Guaranty, McAlavy personally guaranteed "any and all obligations of Quality Mat of every kind and character, irrespective of the amount of said obligations, whether now existing or hereafter arising … suffered by MarChem or MarChem's assigns by reason of Quality Mat's or Guarantor's default in payment of any of the foregoing indebtedness, and any renewal, extension or rearrangement of the indebtedness, costs, or expenses associated with such default."

44. On September 26, 2016, pursuant to the Personal Guaranty, PolyOne demanded that McAlavy pay for the Unpaid Invoices.

45. Despite this demand, McAlavy has failed and refused to pay for the Unpaid Invoices.

46. McAlavy's failure to pay for the Unpaid Invoices constitutes a breach of contract.

47. The breach of contract by McAlavy has caused PolyOne to be damaged in the amount of $446,204.19 plus interest.

### COUNT III – STUBBORNLY LITIGIOUS
### (Against All Defendants)

48. PolyOne realleges and incorporates Paragraphs 1-47 as if set forth more fully herein.

49. Defendants have acted in bad faith, have been stubbornly litigious, and have caused PolyOne unnecessary trouble and expense, thereby entitling PolyOne to recover their expenses of litigation, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

### COUNT IV – COSTS OF COLLECTION
### (Against All Defendants)

50. PolyOne realleges and incorporates Paragraphs 1-49 as if set forth more fully herein.

51. PolyOne made demand upon Defendants to satisfy amounts due and owing by Defendants to PolyOne.

52. Despite these demands, Defendants failed to pay for the Unpaid Invoices.

53. As a result, Defendants are liable to PolyOne for attorneys' fees and costs incurred in enforcing the Amended Sales Contract, with such amounts to be calculated by reference to O.C.G.A. § 13-1-11.

54. Notice is hereby given pursuant to O.C.G.A. § 13-1-11 that Defendants may avoid imposition of attorneys' fees and costs by payment in full of all amounts herein stated, within ten (10) days of receipt of this Notice.

WHEREFORE, PolyOne respectfully requests that the Court grant PolyOne a judgment as follows:

a) Against Quality Mat on Count One in an amount not less than $446,204.19 plus interest;

b) Against McAlavy on Count Two in an amount not less than $446,204.19 plus interest;

c) Against Defendants, jointly and severally, on Count Three for damages resulting from Defendants' bad faith and stubborn litigiousness;

d) Against Defendants, jointly and severally, on Count Four for PolyOne's attorneys' fees and costs calculated pursuant to O.C.G.A. § 13-1-11; and

e)  for such further relief as is just under the circumstances.

Dated:  January 10, 2017.

                                       **THOMPSON HINE LLP**

*/s/ Garrett A. Nail*
Garrett A. Nail
Georgia Bar No. 997924
Alexandra C. Nelson
Georgia Bar No. 241352
3560 Lenox Road, Suite 1600
Atlanta, Georgia 30326
Telephone: 404-541-2900
Facsimile:  404-541-2905
*garrett.nail@thompsonhine.com*
*alexandra.nelson@thompsonhine.com*

*Attorneys for Plaintiff PolyOne Corporation*

171109.3